United States ex rel. James Scott vs. J. H. Burdick, U. S. Marshal.

UNITED STATES EX REL. JAMES SCOTT V. J. H. BURDICK, U. S. MARSHAL.

1. *HABEAS CORPUS:* WRIT WHEN GRANTED: JURISDICTION. The Supreme and District Courts of this Territory possess common law as well as chancery jurisdiction; and the said courts and the respective Judges thereof may grant writs of habeas corpus in all cases, and in similar manner, in which they are granted by the Federal courts and Judges.

United States ex rel. James Scott vs. J. H. Burdick, U. S. Marshal.

2. ——: ——: ——. The writ may be granted as well in cases where the petitioner is restrained of his liberty for an alleged crime against a law confined in its operation to the Territory—whether enacted by Congress or the Territorial Legislature—as against an act of Congress applicable to the whole of the United States.

3. ——: ADJUDICATION: APPEAL. From an adjudication by the District Court or a Judge thereof on petition for writ of habeas corpus, an appeal lies to the Supreme Court of the Territory.

4. *INTOXICATING LIQUORS:* SALE TO INDIANS: JURISDICTION. The sale of intoxicating liquors to an Indian in charge of an Indian Agent, except by an Indian in the Indian country, is an offense against the laws of the United States, for the trial and punishment of which the Federal courts alone have jurisdiction.

5. ——: ——: LOCUS IN QUO. The offense is the same, and the jurisdiction is unchanged, whether the liquor is sold to such Indian in the Indian country, on a reservation, or in some place within the exclusive jurisdiction of the United States, or without the boundaries of either.

## *Appeal from Yankton County District Court.*

THE relator was arrested on information charging him with the offense of selling, giving away and disposing of spirituous liquor to an Indian, in charge of an Indian Agent, at the City of Yankton, D. T.; confessedly not in the Indian country, nor on an Indian reservation, said Indian being temporarily absent from his agency. After a preliminary examination before a commissioner, the defendant was committed to await the action of the United States grand jury. He then presented his petition to the court below, praying for a writ of habeas corpus, which was granted, and on the hearing that court refused to discharge the prisoner, and ordered him remanded to the custody of the U. S. marshal until he should execute the required recognizance.

From this judgment, the relator appeals.

*Shannon & Washabaugh,* for relator.

*Wm. Pound,* U. S. Att'y, for respondent.

SHANNON, C. J.—On the tenth day of July, 1875, James Scott presented his petition to the above named court in term-time, praying for a writ of habeas corpus, to be directed to the

U. S. marshal, J. H. Burdick. On the same day the writ was granted, and a hearing took place on the following return of the marshal, to-wit:

I hold the person named within in my custody, by virtue of a warrant of commitment made and issued to me by L. Congleton, a U. S. commissioner in and for the Second Judicial District of the Territory of Dakota, dated July 8th, A. D 1875, a certified copy of said warrant of commitment being herewith attached, marked: 'Exhibit 'A.' He is held by me as C. Higgins, *alias* James Scott, and I have his body here in court, as I am within commanded. Signed, J. H. BURDICK,
Yankton, July 10, 1875.                                          U. S. Marshal.

On the same day that court rendered a decision as follows: "Upon the return, as above, of this writ, and after hearing and argument of counsel, and in consideration thereof, it is ordered and adjudged that the said C. Higgins, *alias* James Scott be, and he is, remanded into the custody of the U. S. marshal, until he shall enter into proper recognizance in the sum of $200.00, with at least two good sureties, according to law, for his appearance at the October term, 1875, or until he shall be otherwise discharged according to law."

From the record and facts brought up by this appeal, it further appears that the relator (a white man) was held by the defendant by virtue of said warrant of commitment, on the charge of giving, bartering and selling spirituous liquors to an Indian, in Yankton, Yankton County, Dakota Territory, (within the jurisdiction of the court below) the said Indian belonging to the Yankton Indian reservation, and being under the jurisdiction (or charge) of an Indian agent. The complaint was under section 2139 of the revised statutes of the United States, and the City of Yankton, in Yankton County, the *locus in quo*, is not within the Indian country, nor within any reservation.

In the court below, as well as in this court, the relator con-"tended that "he is not committed or detained by virtue of "any process issued by any court of the United States, or any "judge thereof, in a case where such courts or judges have "jurisdiction under the laws of the United States, or have ac-"quired such jurisdiction by the commencement of any suit in "such court; or by virtue of any final judgment or decree of "any competent tribunal of civil or criminal jurisdiction, or

"by virtue of any execution issued upon such judgment or "decree"; and furthermore that "his said imprisonment is il- "legal, and the said illegality consists in this, to-wit: That "by section 2139 (Revised Stats. of U. S.) the United States "have no jurisdiction to arrest, confine, detain or try him for "the offense mentioned in the complaint, (and in the commit- "ment) of selling, giving and disposing of spirituous liquors "to an Indian, at the City of Yankton, D. T., because if said "offense was committed at Yankton (the city) it is not in the "Indian country, and therefore the United States have no ju- "risdiction of the said offense."

On the argument in this court, two questions have been pre- sented: first, is this an appealable case? Secondly, if the re- lator did give, barter or sell spirituous liquor to an Indian, under the charge of an Indian agent, but such act occurred *not in the Indian country*, but outside thereof, is it a criminal offense under the said section 2139 of the revised statutes of the United States.

As to the first point, the Supreme Court and the District Courts of this Territory possess common law as well as chan- cery jurisdiction (Sec. 1868, Rev. Stats. of U. S.) and the said courts, and the respective Judges thereof, may grant writs of habeas corpus in all cases in which the same are grantable by the Judges of the United States in the District of Colum- bia. (Sec. 1912.)

In what cases are such writs grantable by the last named Judges? (See Act of Congress of 27 February, 1801, § 3, 2 stat. 105; Act of 29 April, 1802, § 24, 2 stat., 166; Act of 3 March, 1863, 12 stat., 762; *Kendall v. U. S.*, 12 Pet., 624; *Decatur v. Paulding*, 14 Pet., 601; *U. S. v. Williams*, 4 Cr. C. C., 376.

From this examination it seems that the Judges in that district were, and are authorized to grant writs of habeas corpus in all cases (and in a similar manner) in which they were grantable by the federal courts and Judges, as pointed out in title XIII, chap. 13, Rev. Stat. of U. S., entitled "Ha- beas Corpus." And, moreover, that they were and are em- powered to grant them, as well in cases where the petitioner was or is restrained of his liberty for an alleged crime against

a law confined in its operation to the District of Columbia, as against an act of Congress applicable to the whole of the United States, criminal cases in this Territory are of two classes—first, those that arise under the local or territorial laws; secondly, those that arise under the general criminal laws of the United States.

It follows, therefore, that the meaning of section 1912 is: that the Supreme Court and the District Courts of Dakota, in term-time, and any one of their Judges in vacation, may grant writs of habeas corpus in all cases of both the above classes, to-wit: whether the prisoner is in custody, under, or by color of the authority of the United States, and is committed for trial before some court thereof; or whether he is restrained of his liberty under or by color of a law enacted by the Legislative Assembly of the Territory, and is held for trial before some court of a county.

But again, the present case is one arising under a general law of the United States; and by section 1910 (Rev. Stat.) the court below has and exercises the same jurisdiction in such a case, as is vested in the Circuit and District Courts of the United States.    Consequently, whatever jurisdiction a court of the latter kind has, in any state, in cases arising under the federal laws, the same has been conferred upon our District Courts.    And with the grant of jurisdiction, go all the principles and rules of procedure, appertaining or necessary to it.

In other words, in all cases arising under the constitution and laws of the United States, each of our three District Courts is, as to jurisdiction and procedure, exactly like a Federal District Court sitting in a state, with this difference, however: that to the above jurisdiction of our District Courts is superadded in such cases the jurisdiction of the Circuit Courts of the United States.

And as to such cases, when arising under habeas corpus, see sections 751, 752 and 753 of the Revised Statutes.    The following sections, to-wit: (754 to 761, inclusive) regulate the procedure upon all such writs; and in so far as these sections do not regulate the *procedure*, Mr. Abbott, (Vol. 2, U. S. Practice, 211) on authority cited, considers that it is governed

by the common law of England, as it existed at the time of the adoption of the constitution. (*Ex Parte Kaine*, 3 Blatch., C. C., 1; *Ex Parte Aernam*, ibid, 160. It is observable that by section 1912, the Supreme Court and the District Courts have concurrent original jurisdiction. The general principle as to the comity of tribunals of concurrent jurisdiction, is, that between such courts, the court that first takes possession of the controversy must be allowed to dispose of it finally, without interference or interruption from the co-ordinate Court. The comity shown by courts to the proceedings of each other in the application of this rule has, indeed, a foundation of necessity in the nature of judicial power. The power to determine controversies does not admit of adverse determinations of the same controversy by co-ordinate tribunals. The authority of a court to dispose of a given case pending before it, must necessarily exclude the authority of any other court to determine the same controversy under the same conditions, except in the way of a regular and orderly revisal, after determination has been had. This rule is essential to the administration of justice in all countries where there is more than one court having the jurisdiction of the same matter. Take for instance those cases in which the courts of the several states are to be regarded as co-ordinate with those of the general government. It has been laid down as a general rule of action for them that whichever shall first take jurisdiction of a case, the jurisdiction of the other may thereafter be defeated by a plea in abatement. (*Earle v. Raymond*, 4 McLean, 233.)

Where a court of co-ordinate jurisdiction, therefore, first becomes in possession of a case, it has a right to decide every question which occurs in the cause; and whether its decision be correct or otherwise, its judgment, until reversal, is binding in every other court. (*Decatur v. Paulding*, 14 Pet., 600; 1 Pet., 340; 3 Pet., 203; *Ex Parte v. Watkins*; *Peck v. Jenness*, 7 How., 625; 20 How., 596; 19 Wall., 223.)

Although not of much importance now, yet it is curious to observe the tendency of courts in this country to attach to a decision in habeas corpus the legal incidents belonging to

*rem adjudicatam.* See in New York as to this point, 25 Wend., 64; 6 Johns., 337; 3 Hill, 400–415; ibid, 675, note, page 51; 1 Parker's Cr. R., 129; 3 Parker's Cr. R. 531.

In 1840, in the Supreme Court of the United States, the question whether a writ of error would lie to a decision on a habeas corpus, was discussed in the case of *Holmes v. Jennison*, 14 Peters, 540. Several Judges expressed their opinions upon this point, and from these it may be collected that five of the Judges concurred in the view that the writ would lie in such a case. Justices Thompson and Barbour expressed no opinion on the point; and Baldwin, J., alone held that the writ would not lie to a decision on habeas corpus. But shortly thereafter, on the 29th of August, 1842, (5 Stat., 539, § 763 Rev. Stat.; Brightly's Dig. of Laws, vol. 1, 302) Congress enacted that from the final decision of any court, justice or judge, inferior to the Circuit Court, upon an application for a writ of habeas corpus, or upon such writ when issued, an appeal may be taken to the Circuit Court, etc., that act, however, only providing an appeal in a specific case. (See, also, the Act of Congress of 5th Feb., 1867, § 763 of Rev. Statutes; 14 Stat., 385; in Brightly's Dig., vol. 2, 213.)

Next in the order of time, came the decision, upon the Statute of 5 February, 1867, to be found in Ex-parte McCardle (at Decr. T., 1867) 6 Wall., 318.

Then followed Act of 27 March, 1868, § 1, 15 stat., 44, in 2 Brightly's Dig., 214, repealing the right of appeal to the Supreme Court of U. S.; and then again came Ex-parte McCardle, in 7 Wall., 506. * * * * Happily, we are not left in doubt as to whether an appeal will lie in the case before us; for by section 1869 of Revised Statute, writs of error, bills of exception, and appeals shall be allowed, in all cases, from the final decisions of the District Courts to the Supreme Court, under such regulation as may be prescribed by law; and by section 1910, writs of error and appeals in all cases, or causes, arising under the constitution and laws of the United States, may be had to the Supreme Court of the Territory, as in other cases. (See 14 Peters, 540.)

Section 1909, prescribes, moreover, that upon writs of habeas corpus involving the question of personal freedom, a writ of error, or appeal, shall be allowed to the Supreme Court of the United States, from the decision of the Supreme Court of the Territory, or of any Judge thereof, or of the District Courts, or of any Judge thereof.

We come now to the consideration of the second question presented, to-wit: if the relator did give, barter, or sell spirituous liquor to an Indian, under the charge of an Indian Agent, but such act occurred *not in the Indian country*, but outside thereof, is it a criminal offense under section 2139 of the Revised Statutes of the United States?

After a careful examination into the sources from which this section was drawn, to-wit: the original acts of Congress of 9 July, 1832, and 15 March, 1864, and the case of *United States v. Halliday*, in 3 Wallace, 407, as well as from the words of the revised law, we have come to the unanimous conclusion that the exception in the second clause or sentence of this section, to-wit: "*except an Indian*," does not end with the punctuation immediately after the above word "Indian," but that the exception clearly extends to and embraces "*an Indian in the Indian country*"—as if it stood thus: except an Indian in the Indian country.

The true construction, therefore, of this law, is, that "every person who sells, exchanges, gives, barters, or disposes of any spirituous liquors or wine to any Indian under the charge of any Indian superintendent or agent * * * shall be punishable by imprisonment for not more than two years, and by a fine of not more than three hundred dollars;" and that the only persons exempted from this punishment are Indians themselves, who, in the Indian country, thus sell, give, or dispose of such liquor or wine to any Indian under the charge of any Indian superintendent or agent.

As to the policy or wisdom of this exception, we, of course, have nothing to say; that is beyond our province. But it is proper to observe, in this connection, that this special impunity extended to Indians in the Indian country, seems well to harmonize with the spirit and policy of all the enactments of

Congress relating to intercourse with the Indian tribes. By the Acts of 30 June, 1834, and 27 March, 1854, as revised and embodied in section 2145, the general laws of the United States as to the punishment of crimes committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country. And by section 2146, as amended by the Act of 18 February, 1875, entitled " An act to correct errors and to supply omissions in the Revised Statutes of the United States," it is declared that the preceding section (2145) shall not be construed to extend to crimes committed *by one Indian against the person or property of another Indian*, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively."

Whence it appears that, although an Indian in the Indian country, may commit larceny of the property of another Indian, or may there assault him with intent to kill, or may there even murder him, yet our courts are powerless to punish, because they have no jurisdiction. In accordance, therefore, with such well-settled legislation as to crimes of such magnitude, it might well seem absurd to the law giver to depart from the clear line of policy thus laid down, and to render an Indian in the Indian country punishable for the minor offense described in section 2139.

However this may be, we find that when an Indian in the Indian country, sells, gives, or disposes of any spirituous liquors or wine to another Indian there, who is under the charge of an Indian Agent, he is as exempt from punishment in our courts, as he would be in regard to the other crimes enumerated.

It does not, therefore, avail the appellant to assert that the offense as charged was committed at the City of Yankton, and outside of the Indian country. It is a criminal offense

under said section 2139; and the marshal properly held the accused under the warrant of commitment issued by the U. S. commissioner.

We can find no error in the proceedings or decision of the court below; and the same are hereby

AFFIRMED.