## UNITED STATES *v.* EARL.

### *(Circuit Court, D. Oregon.* June 26, 1883.)

1. INDIAN—WHEN UNDER CHARGE OF AN AGENT.
   When a tribe of Indians is placed under the charge of an Indian agent by treaty or otherwise, each member of such tribe is under the charge of such agent, within the purview of section 3129 of the Revised Statutes, and no member thereof can dissolve his tribal relation or escape from such charge by absenting himself from such reservation, or otherwise, without the consent of the United States.

2. SAME.
   An Indian boy in Oregon, who left the locality of his tribe and lived with a white family until his tribe had entered into treaty relations with the United States and gone upon a reservation in pursuance of such treaty, and until he was 23 years of age, and then went to live upon such reservation as a member of his tribe, could not thereafter, by simply absenting himself from the reservation, dissolve his tribal relation or cease to be under the charge of the agent of such reservation.

3. INTERCOURSE WITH INDIANS.
   It is the duty of congress to regulate the intercourse with the Indians, and to that end they may provide for punishing the giving of spirituous liquors to them on or off a reservation within or without a state.

Motion for New Trial. Information for disposing of spirituous liquor to an Indian.

On April 28, 1883, the district attorney, by the leave of the court, filed an information in the district court, charging the defendant with the disposing of spirituous liquor in this district to Jake Thomas, an Indian under charge of an Indian agent of the United States, on March 1, 1883, contrary to section 2139 of the Revised Statutes, which provides that every person who disposes of spirituous liquor to any Indian "under the charge of any Indian superintendent or agent" shall be punished as therein provided. The defendant pleaded not guilty to the information, and the cause was thereupon removed to the circuit court and there tried before the district judge with a jury. On May 17th the jury, under the instruction of the court, found the defendant guilty as charged in the information. The defendant moved for a new trial on the ground of error in the instruction to the jury, and the motion was heard on June 26th before Mr. Justice FIELD and the district judge.

*James F. Watson,* for the United States.

*Charles B. Bellinger,* for defendant.

DEADY, J. On June 25, 1855, a treaty was negotiated with "the confederated tribes and bands of Indians residing in middle Oregon," at Wasco, Oregon, and ratified by the senate, March 8, 1869. 12 St. 963. Among these tribes were the Wascoes, belonging to the country about the Dalles of the Columbia. The treaty provided for the cession to the United States of the country belonging to these tribes, and the establishment of a reservation therein for their "exclusive use," commonly called "the Warm Spring reservation," to which they were to remove within a year from the ratification of the treaty.

On the trial it was admitted that the defendant kept a saloon at the Dalles, about 30 miles from the agency, and there disposed of whisky to the Indian, Jake Thomas, as alleged in the information. It also appeared from the testimony of said Indian that his parents belonged to the Wasco tribe of Indians, and that he was born near the Dalles about the year 1845, and that about 1855 he came down to the Wallamet valley with his parents, where he lived with them near Oregon City, at the residence of Col. Jennings, a well-known citizen. Thomas' father carried an express for the "government" in the Cayuse war of 1847. Gen. Palmer, when superintendent of Indian affairs, transferred the father to the "Grand Round reservation," as Thomas says, in 1861; but as Palmer was not superintendent after the early part of 1857, and the Indian is more likely to remember the name of the superintendent than the date of the transaction, such transfer must have taken place during Palmer's superintendency, and probably in 1856 or 1857, as the Grand Round reservation was not formally established until the latter year. 11 St. 183; Ex. Order, June 30, 1857. In about a year he returned to Col. Jennings' place and died; but Thomas remained with the latter, except a a short interval spent in running on a steam-boat to the Dalles in 1862, until 1868, when he went to live upon the Warm Spring reservation, where he remained about four years—part of the time engaged in teaching. In the winter of 1872–3 he served three months with a company of Indian scouts from the reservation in the Modoc war. Then he was in the Wallamet valley, knocking about on steam-boats and in tavern kitchens for two years, and the two following years he spent upon the reservation. Since then he has lived about the Dalles until last fall, when he went upon the reservation, where he has a sister, but no house, and remained there until this spring. During the latter period he bought and sold a piece of land. He has a family, that now reside about five miles from the Dalles. He also has a band of horses upon the reservation, and is allowed the privileges of the same as a Wasco Indian. When on the reservation he does not appear to have drawn any annuity or supplies, but says he could have done so if he wanted to; and that the reason he did not draw any supplies the last time he was there, was, "the treaty had run out." The court instructed the jury that the disposition of the spirituous liquor to the Indian being admitted, the only other question in the case is, "Was he an Indian under the charge of an agent?" and upon this point he said:

"If you believe the testimony of Thomas himself, then you ought to find the defendant guilty, because upon that testimony he is, and was at the date of the disposition to him of the liquor in question, an Indian under the charge of the Indian agent at the Warm Spring reservation."

To this instruction there was an exception, and counsel for the defendant now contend that it was erroneous, and therefore the motion for a new trial ought to be allowed.

The Wasco tribe of Indians were bound by the treaty of June 25, 1855, made with their "chiefs and head men," to go upon this reservation, and be subject to, under the charge and care of, an agent appointed by the United States for them. This convention included and applied to every member of the tribe in the same sense that a treaty duly concluded between the English and American governments does to the subjects and citizens of such powers. More than this, the United States claims and has righfully exercised the power to place Indians upon reservations, or within circumscribed localities, and appoint agents to take charge of them there, as its wards, without any treaty to that effect, but simply upon its own volition, manifested by an act of congress or other proper department of the government. This treaty and appointment of an agent to take charge of the Indians upon the reservation thereby established, included Thomas, a member of the Wasco tribe of Indians, and thereafter we do not think it was in his power to relieve himself from the operation of the one or the authority of the other without the consent of the United States. The government of the latter is charged with the duty of regulating the intercourse between the Indian tribes and the other inhabitants of the country, and to this end it may inaugurate and pursue that policy in regard to such intercourse as may be for the best interest of all concerned.

But it may be said that, for the purpose of this case, the Indian should not only be under the charge of an agent potentially, but also as a matter of fact, and that whenever an Indian is allowed to be much or most of his time away from the reservation, doing for himself, he is not to be considered as under the charge of an agent. The fact that the Indian was off the reservation when he obtained the liquor from the defendant is rather suggested than asserted as some kind of an excuse for the act. But the defendant was not obliged or induced to sell this Indian liquor because he was not upon the reservation. It is a well-known fact that the Indians of Oregon, as a rule, belong to some reservation by virtue of treaty stipulations, and are actually or potentially under the charge of an agent; and whoever disposes of spirituous liquor to any one of them does so *prima facie* in violation of law. As was said by Mr. Justice MILLER, in *U. S.* v. *Holliday*, 3 Wall. 415 :

" The policy of the act is the protection of those Indians who are, by treaty or otherwise, under the pupilage of the government, from the debasing influence of the use of spirits; and it is not easy to perceive why that policy should not require their preservation from this, to them, destructive poison, when they are outside of a reservation, as well as within it. The evil effects are the same in both cases."

If it is admitted that this Indian was a member of the Wasco tribe at the date of the treaty of 1855, he was within its operation, and subject in law to the charge of the agents residing at the Warm Spring reservation since its ratification, unless his tribal relation has

since been dissolved. The recognition or dissolution of the tribal relation is a matter in which the courts usually follow the action of the political departments of the government. *U. S.* v. *Holliday, supra,* 419.

It does not appear that the tribal relation of Thomas has been dissolved by any act of the government, or that it has in any way consented to or acquiesced in any such purpose on his part. And, without such consent, we do not think the relation can be dissolved, as against the United States, after being recognized by it. But in the absence of any law or regulation made or authorized by congress to that effect, mere absence from the reservation, however prolonged, is not proof of such consent, because it may occur without the approval of the government, and it may take place with the consent of the agent for some lawful purpose, and with intent to return.

It may be admitted that an Indian who had separated from his tribe before the government took cognizance of it, as such, by treaty or otherwise, and did not return thereto, or claim or enjoy, at the hands of the government, any right or privilege as a member of such tribe, is not under the charge of an agent, within the meaning of section 2139 of the Revised Statutes. But in the case at bar, although the Indian was apparently separated from his tribe at the date and ratification of the treaty of 1855, by the act of his father, yet soon after coming to man's estate he voluntarily went upon the reservation therein provided for, and claimed and was allowed the privileges of such a reservation, as a member of the Wasco tribe of Indians, where he has since remained quite half the time, including a period so late as the last winter, and still keeps his stock there. Indeed, the absence of this Indian from this reservation since 1868 is probably owing to the fact that he is thereby enabled to get whisky from the defendant and others engaged in that business.

Under the circumstances, we are clearly of the opinion that Thomas is under the charge of the Indian agent at Warm Spring; since 1868, at least, when he went to live upon that reservation. The motion for a new trial is therefore overruled, and the defendant ordered to appear for sentence.

See *Forty-three Gallons of Cognac Brandy,* 11 FED. REP. 47, and note, 51, S. C. 14 FED. REP. 531, and note, 540