Deady, D. J.
This is an information filed by the district attorney against Frank Osborn, charging him with having disposed of spirituous liquor to an Indian, under the charge of an Indian agent, contrary to section 2139 of ihe Eevised Statutes.
The defendant pleaded not guilty, and submitted to be tried by the court without the intervention of a jury.
The evidence, in which there is no conflict, proves that the Indian in question belongs to one of the tribes on the Warm Spring Eeservation, under charge of Indian Agent Oapt. John Smith; that with the consent of the agent and his mother he has lived off the agency with Mr. Miller, near Eugene, in •this state, for the past eight or ten years, as a domestic, and was therefore commonly called “Joe Miller;” that within a few months since he left the house of Mr. Miller, and has been working in the neighborhood for some of the farmers, and occasionally making his home with an Indian living in the vicinity upon a portion of the public land under the homestead act, and called “Indian Jim; ” that this Indian belongs to one of the coast reservations, but has not resided there for some fifteen years, and claims to be a citizen and voter of Oregon; that a short time since, and after Joe had left the Millers, he went to Eugene, a few miles distant from his former residence, and asked the defendant, who kept a drug store there, for a pint of alcohol.
The defendant knew the Miller family, and Joe, as an Indian *59 who lived with them and bore their name, and when Joe asked for the alcohol he asked him if he was Miller’s boy, and Joe answered, “yes;” whereupon, he sold him the liquor. Agent Smith has known of the whereabouts of this Indian Joe since he left the reservation, and claims the right to return him there whenever he thinks proper; and his mother is still living there.
Upon these facts and the authority of U. S. v. Holliday, 3 Wall. 418, there can be no doubt but that Joe is an Indian under charge of an agent appointed by the United States. In this case the Indian to whom the liquor was disposed lived upon a piece of land which he occupied in severalty, and voted at the elections, as he was authorized to do by the laws of the state of Michigan.
There appears to be an impression that Indians situated as Jim and Joe are — that is, who live off the reservation and among, and more or less after, the manner of white people— are citizens and voters of the state, and therefore it is no crime to give them spirituous liquors. But this is a mistake. The Indians are not a portion of the political community called the “People of the United States;” and, although not foreign nations or persons, they have always been regarded and treated as distinct and independent political communities. Worcester v. The State of Georgia, 5 Pet. 515; The Cherokee Nation v. The State of Georgia, Id. 1.
What effect, if any, the act of March 3, 1871, (16 St. 566; Rev. St. § 2079,) which declares that no Indian tribe within the territory of the' United States “shall be acknowledged or recognized as an independent nation, tribe or power, with whom the United States may contract by treaty,” may have upon this question, it is not necessary now to consider. Probably none, as in effect it is only a declaration that thereafter the United States will not contract with the Indian tribes, but will regulate its relations with them and their affairs by law — by act of congress rather than the treaty-making power; and whether, and how far, congress can thus limit the constitutional power of the president, “by and with the advice and consent of the senate, to make treaties, ” (arti *60 ele 2, § 2, Con. TL S.) is another question of a more serious character.
The constitution of this state limits the privilege of suffrage to “white males.” Article 2, § 2, Con. Or. But by the operation of the fourteenth and fifteenth amendments this word “white” is, in effect, stricken out of the constitution of the state. The fourteenth one provides that “all persons born or naturalized in the United States,- and subject to the jurisdiction thereof, are citizens of the United States and of the state where they reside;” and the fifteenth one declares that “the right of citizens of the United States to vote shall not be denied or abridged by the United States, or by any state, on account of race, color, or previous condition of servitude.” The result is that citizens of the United States cannot be excluded from the polls on account of color. Therefore, negroes born in the United States, being born “subject to the jurisdiction” thereof, became citizens and voters.
But the Indian tribes in the United States, or the members thereof, are not born “subject to the jurisdiction” of the United States. McKay v. Campbell, 2 Saw. 132. There are no Indians in Oregon that were-born subject to its jurisdiction or that have since become so. In the report of the senate judiciary committee, made by Mr. Carpenter, December 14, 1870, it was stated that the Indian tribes, or the members thereof, are not subject to the jurisdiction of the United States, and, therefore, such Indians are not made citizens by the fourteenth amendment. 1 Dillon, 348, note.
The state may make any Indian a voter, or the United States may make him a citizen, and then by operation of the fifteenth amendment he becomes a voter within the state where he resides, if he is otherwise qualified according to its laws.
By the treaty of January 31, 1855, (10 Stat. 3157,) the tribal organization and relation of the Wyandotte Indians, in Kansas, with the United States, was dissolved and terminated, and they were made “citizens of the United States to all intents and purposes.”
*61 But an Indian cannot make himself a citizen of the United States without the consent and co-operation of the government. The fact that he has abandoned his nomadic life or tribal relations, and adopted the habits and manners of civilized people, may be a good reason why he should be made a citizen of the United States, but does not of itself make him one. To be a citizen of the United States is a political privilege, which no one not born to can assume without its consent in some form.
The Indians in Oregon, not being born subject to the jurisdiction of the United States, were not born citizens thereof, and I am not aware of any law or treaty by which any ot them have been made so since. ■
It follows as a matter of course that the defendant, in disposing of spirituous liquors to the Indian Joe, when and as he did, was guilty of a violation of the statute. But as it appears probable that the act of the defendant was the result of carelessness or a misapprehension of the status of the Indian Joe, rather than any guilty purpose to violate the law, I think it is a proper case for a mere nominal punishment. The defendant is therefore sentenced to pay a fine of one dollar.