[No. 21062. In Bank.—December 31, 1894.]

## THE PEOPLE, RESPONDENT, *v.* WILLIAM BRAY, APPELLANT.

CRIMINAL LAW—SELLING LIQUOR TO INDIANS—CITIZENS—CONSTRUCTION OF PENAL CODE.—Section 397 of the Penal Code forbids the sale or giving of liquors to Indians of full blood without reference to the question whether they have or have not adopted the habits of civilization, or separated themselves from tribal relations, or have become citizens of the United States.

ID.—CONSTITUTIONAL LAW.—Section 397 of the Penal Code, construed as applying to all Indians, is not in conflict with any provision of the constitution of the United States or of this state; and does not deprive any citizen of his privileges and immunities as such.

ID.—GENERAL LAW—UNIFORM OPERATION.—The provisions of section 397 of the Penal Code are general and uniform in their operation, affecting in the same manner all persons belonging to the class referred to.

ID.—PRIVILEGES AND IMMUNITIES OF CITIZENS—RESTRAINTS FOR GENERAL GOOD.—The privileges and immunities pertaining to citizens are those which are in their nature fundamental; but these privileges and immunities are subject, nevertheless, to such restrictions as the government may justly prescribe for the general good of the whole.

ID.—RESTRICTION OF SALE OF INTOXICATING LIQUORS—POWER OF LEGISLATURE.—In regulating the sale of intoxicating liquors the legislature may, in the exercise of its judgment as to what restrictions upon such sale the general good of the public requires, prescribe the conditions upon which the license to make such sale shall be granted; and laws restricting the sale of liquors, and forbidding such sale to certain classes of persons, who are peculiarly liable to be injured or demoralized by indulgence in alcoholic beverages, are constitutional and valid.

APPEAL from a judgment of the Superior Court of Sonoma County and from an order denying a new trial.

The facts are stated in the opinion of the court.

*J. M. Thompson,* and *Rolfe L. Thompson,* for Appellant.

*District Attorney Emmet Seawell, Attorney General W. H. H. Hart,* and *Deputy Attorney General Charles H. Jackson,* for Respondent.

DE HAVEN, J.—The defendant was convicted of the crime of selling intoxicating liquor to an Indian, named Mary Smith, in violation of section 397 of the Penal Code, which, as amended in 1893 (Stats. of 1893, p. 98), reads as follows: "Every person who sells or furnishes, or causes to be sold or furnished, any intoxicating liquors to any habitual or common drunkard is guilty of a misdemeanor; or who sells or furnishes, or causes to be sold or furnished, intoxicating liquors to any Indian is guilty of a felony." It was admitted upon the trial that the defendant furnished intoxicating liquor to the said Mary Smith, at the time and place stated in the information, and that she "has no other than Indian blood in her veins." It was further shown that her father and mother live in a house of their own, and their said daughter, Mary, resides with them; that the parents and daughter dress like white people, and have adopted the habits and customs of civilized life; that the father of the said Mary owns a horse, wagon, household goods, and other property, and that neither he nor any of his family have ever lived upon a government reservation, "nor have they ever lived in tribal relations, or under or subject to the control of any chief or like authority." Upon this state of the evidence the defendant requested the court to give the following instructions:

" 2. Section numbered 397 of the Penal Code, under which the information in this case was filed, is not violated by a sale of intoxicating liquor to an Indian, who at the time of the sale was a citizen of this state."

"4. If you find from the evidence that the Indian in question was born in this state, and at the time of her birth her parents were living separate and apart from any tribe of Indians, and had no tribal relations, and did not live on any Indian reservation, or other land set apart for such purpose, then I charge you that the Indian in question is a citizen of the United States, and you cannot convict the defendant of the crime charged against him in the information, even if you should also find that he did sell or furnish the said Indian intoxicating liquors at the time alleged."

"12. All citizens of this state are entitled to equal protection under the law in person, property, and privileges, and a law which takes from one person, on account of color or race, any privilege which others are legally permitted and allowed to enjoy, is void as to such person."

The court refused to so instruct the jury, and this refusal is assigned as error, and presents all the grounds upon which the defendant claims that the judgment and order appealed from should be reversed; and the counsel for appellant rest their argument for such reversal upon these three propositions: 1. That under the facts shown the person named in the information as the one to whom defendant furnished the intoxicating liquor is a citizen of the United States; 2. That section 397 of the Penal Code, in so far as it relates to Indians, applies only to those Indians who are under control of the general government as dependent communities, living in tribal relations or upon government reservations, and as such deemed wards of the general government; 3. That, if said section is not so limited by construction, it is void, because it discriminates between citizens of the United States, denying to the citizen of Indian birth the privilege of buying intoxicating liquors, which is accorded to citizens of the white race, and that, in making such distinction, it abridges the privileges and immunities of the former.

By an act of Congress approved February 8, 1887 (24

U. S. Stats. at Large, 390), it is provided that "every Indian born within the territorial limits of the United States who has voluntarily taken up within said limits his residence, separate and apart from any tribe of Indians therein, and has adopted the habits of civilized life, is hereby declared to be a citizen of the United States, and is entitled to all the rights, privileges, and immunities of such citizens, whether said Indian has been or not, by birth or otherwise, a member of any tribe of Indians within the territorial limits of the United States, without in any manner impairing or otherwise affecting the right of any such Indian to tribal or other property." It was undoubtedly competent for Congress to thus confer upon Indians the privileges of citizenship (*Elk* v. *Wilkins*, 112 U. S. 94), and it may be conceded that the facts of this case show that the said Mary Smith, referred to in the information, is a citizen of the United States within the meaning of the act of Congress from which the foregoing quotation is made, and as such, that she is entitled to the privileges and immunities of such citizens; but we are not able to agree with the further contention of appellant's counsel in their construction of section 397 of the Penal Code. In our opinion that section forbids the sale or giving of liquors to Indians of full blood, without any reference to the question whether they have or have not adopted the habits of civilization, or separated themselves from tribal relations. It was intended to apply to Indians as a class, and was enacted in view of their well-known race peculiarities and their relations to society. There are thousands of California Indians to be found in this state, most of them civilized to a certain degree, and perhaps none of them living under any well-defined tribal government; they live generally by themselves, in small villages or communities, and yet are in constant contact with the white race, most of them, at times, being employed as laborers in the harvest fields, and in fishing, or as servants in families, or otherwise. The statute applies to this people as a race, and in its enforcement

all inquiry as to the habits or the degree of civilization attained by the individual of such race to whom the intoxicating liquor is furnished, or as to whether he is or is not a citizen of the United States, under the act of Congress before referred to, is irrelevant; and, as thus construed, this section of the Penal Code is not in conflict with any provision of the constitution of the United States or of this state. It is general and uniform in its operation, because it affects in the same manner all persons belonging to the class to which it refers (*Ex parte Smith*, 38 Cal. 710), and does not deprive any citizen of his privileges and immunities as such. The privileges and immunities which pertain to citizens in the several states are thus defined by Washington, J., in *Corfield* v. *Coryell*, 4 Wash. C. C. 380: "We feel no hesitation in confining these expressions to those privileges and immunities which are in their nature *fundamental;* which belong of right to the citizens of all free governments, and which have at all times been enjoyed by the citizens of the several states which compose this union, from the time of their becoming free, independent, and sovereign. What these fundamental principles are it would perhaps be more tedious than difficult to enumerate. They may, however, be all comprehended under the following general heads: protection by the government; the enjoyment of life and liberty, with the right to acquire and possess property of every kind, and to pursue and obtain happiness and safety; subject, nevertheless, to such restrictions as the government may justly prescribe for the general good of the whole; the right of a citizen of one state to pass through or to reside in any other state for purposes of trade, agriculture, professional pursuits, or otherwise; to claim the benefit of the writ of *habeas corpus;* to institute and maintain actions of any kind in the courts of the state; to take, hold, and dispose of property, real and personal; and an exemption from higher taxes or impositions than are paid by the other citizens of the states; may be mentioned as some of the particular privileges and

immunities of citizens which are clearly embraced by the general description of privileges deemed to be fundamental; to which may be added the elective franchise, as regulated and established by the laws or constitution of the state in which it is to be exercised." It will be seen that in the above extract the learned judge was careful to say that the fundamental right to acquire and possess property, and to pursue and obtain happiness, is not unlimited, but that such right is "subject, nevertheless, to such restraints as the government may justly prescribe for the general good of the whole." And it is well settled that, in regulating the sale of intoxicating liquors, the legislature may, in the exercise of its judgment as to what restrictions upon such sale the general good of the public requires, prescribe the conditions upon which the license to make such sale shall be granted.

"Wherever the law allows the sale of liquor under licenses or other restrictions there are statutes forbidding such sale to certain classes of persons who are peculiarly liable to be injured or demoralized by indulgence in alcoholic beverages, such as minors, persons already intoxicated, and habitual drunkards. The constitutionality of such laws has seldom been questioned, and indeed their validity could scarcely be assailed with any show of reason." (Black on Intoxicating Liquors, sec. 42.)

Whatever may be true in respect to particular individuals of that race, it is certainly true that Indians, as a class, are not refined and civilized in the same degree as persons of the white race; and for that reason are less subject to moral restraint, and, therefore, not only less able to resist the desire for such liquors, but also more liable to be dangerous to themselves or others when under the influence of intoxicating liquors. It was, doubtless, in view of considerations like these that, in the judgment of the legislature, it was thought wise to give to persons of the Indian race, as well as the community in which they move, the protecting influence of this statute. Thus viewed, we have no doubt the law

under consideration falls within the proper exercise of the police power of the state. It was so stated by Sanderson, J., in *Ex parte Smith,* 38 Cal. 708, and a statute in all respects similar to it was upheld by the supreme court of the territory of Montana as a valid exercise of the police power in the case of *Territory* v. *Guyott,* 9 Mont. 46, the court there saying: " The act under consideration is clearly within the police power of the territorial government, as defined by the courts, and is not inconsistent with the constitution and laws of the United States."

. These views dispose of all the questions arising upon this appeal.

Judgment and order affirmed.

GAROUTTE, J., HARRISON, J., McFARLAND, J., VAN FLEET, J., and FITZGERALD, J., concurred.