## UNITED STATES v. MILLER.

### (District Court, D. Nevada. January 11, 1901.)

### Nos. 952, 953.

1. INDIANS—INTOXICATING LIQUORS.

Indians who, living in their tribal relations, are, under the laws and treaties, wards of the government, are necessarily under the charge of "an Indian superintendent or agent," though off the reservation at the time liquor is given them, within Rev. St. § 2139, as amended July 23, 1892 (27 Stat. 260), and January 30, 1897 (29 Stat. 506), inhibiting the giving of intoxicating liquors "to any Indian, a ward of the government under charge of any Indian superintendent or agent."

2. SAME—INTENT.

The question of wrongful intent in furnishing intoxicating liquors to Indians is immaterial under the statute declaring that any person who shall furnish it to them shall be punished.

**3. SAME—LIABILITY OF INDIAN.**
An Indian is within the statute decreeing that any person who shall furnish intoxicating liquors to Indians shall be punished.

Sardis Summerfield, U. S. Atty.
J. Poujade, for defendant.

HAWLEY, District Judge (orally). The defendant is a Modoc Indian. He was indicted by the grand jury of the district of Nevada for the crime of disposing of intoxicating liquor to a Piute Indian contrary to the provisions of the statute in such case made and provided. Rev. St. § 2139, as amended July 23, 1892 (27 Stat. 260), amended January 30, 1897 (29 Stat. 506). The defendant was placed on trial before a jury. The bottom facts of this case established by the evidence are that, in the evening of the day named in the indictment, some Piute Indians assembled at the cabin where the defendant resided, and, while engaged in a game of cards, asked the defendant if he could get them some whisky. He replied that he thought he could; that he knew a party from whom he could get liquor, and thought he could find him. That four Piute Indians then put up 25 cents each, and gave the money to the defendant to enable him to buy the whisky. That defendant then left the cabin, and was gone about one hour, and returned with a bottle of whisky. That he procured a small glass, filled it with the contents of the bottle, and himself gave to each of the four Piute Indians who gave him the money the glass thus filled with whisky. That each of these Indians drank the contents thereof and became intoxicated. The defendant, in his testimony, stated that he took the money and went around town, trying to find the person who he thought would procure the liquor for him; that he could not find him; that he then went to the railroad depot, and walked along the railroad track and met a "hobo"; that, after some talk appropriate to the occasion, he prevailed upon the stranger to procure a bottle of whisky for him; that he gave him $1, and promised to reward him with the sum of 25 cents for his services; that after he got the bottle of whisky he paid, of his own money, 25 cents, as promised; that he then returned to the cabin, and, hearing a number of voices therein, he secreted the whisky outside of the cabin and went in to ascertain who were there, and, finding none but Indians present, he went outside, got the whisky, brought it in, and disposed of it as above stated; that the other Indians who had come in also helped to deplete the bottle. It further appeared that on the night in question James Shaw, a reliable and intelligent Indian of the Piute tribe, a member of the Indian police of the Pyramid reservation, intrusted and charged with the duty of quelling all disturbances among the tribe, and specially instructed by the officers of the reservation to ascertain and cause the arrest of every person who disposes of liquor to Indians, on his return from a public entertainment given to the school children, to which he had been invited, was attracted by loud and boisterous noises which he heard in the cabin of the defendant; that in the performance of his duties, he went into the cabin, and at once ascertained that the Indians were all drunk. Thereafter the witness

Shaw, upon inquiry, ascertained all the facts, which, at his instiga-
tion, led to the arrest of the defendant.

At the close of the evidence the defendant moved the court to be
discharged upon the following grounds: That he was under a dis-
ability, and did not have the capacity to commit the crime charged
in the indictment; that he is an Indian, and if the offense charged
was committed by him, and none but Indians were affected by it,
this court has no jurisdiction to punish him; that the policy of the
laws of the United States relating to Indians has ever been, and is,
to confine the jurisdiction of all crimes committed by an Indian upon
Indians to the Indian authorities; and that this jurisdiction is ex-
tended not only to cases in which Indians have provided for the pun-
ishment of crimes and offenses among themselves, but to cases in
which no punishment has been provided for by them. The following
authorities are cited in support of his motion: U. S. v. Barnaby (C. C.)
51 Fed. 20; Ex parte Mayfield, 141 U. S. 107, 115, 11 Sup. Ct. 939,
35 L. Ed. 635; Ex parte Crow Dog, 109 U. S. 556, 3 Sup. Ct. 396, 27
L. Ed. 1030; Alberty v. U. S., 162 U. S. 499, 16 Sup. Ct. 864, 40 L.
Ed. 1051. These authorities, and others of like character, in my opin-
ion, have no application to this case, and need not be reviewed. They
refer to an entirely different class of cases from the one in hand.

The statute under which the defendant was indicted reads as fol-
lows:

"Any person who shall sell, give away, dispose of * * * any malt,
spirituous or vinous liquor * * * which produces intoxication * * *
to any Indian, a ward of the government under charge of any Indian super-
intendent or agent, * * * shall be punished by imprisonment. * * *"

Under the treaties and laws of the United States the Piute and
Shoshone Indians living in their tribal relations are the wards of
the government of the United States, and as such are necessarily
under the charge of "an Indian superintendent or agent," within
the meaning of these words as used in the statute. The fact that
the Indian to whom the liquor was given was off the Indian reserva-
tion at the time he received the liquor constitutes no defense or ex-
cuse whatever. U. S. v. Earl (C. C.) 17 Fed. 75, 77; U. S. v. Hursh-
man (D. C.) 53 Fed. 543, 544; U. S. v. Holliday, 3 Wall. 407, 415,
18 L. Ed. 182. In the case last cited the court said:

"The policy of the act is the protection of t .se Indians who are, by treaty
or otherwise, under the pupilage of the government, from the debasing in-
fluence of the use of spirits; and it is not easy to perceive why that policy
should not require their preservation from this, to them, destructive poison,
when they are outside of a reservation as well as within it. The evil effects
are the same in both cases."

The strict enforcement of this law is essential not only for the
protection of the Indians who are the wards of the government, but
also as a means of safety and security to the citizens of this state
who are placed in fear when the Indians become intoxicated. It is
a matter of common knowledge that the Indians living in their tribal
relations in this state are, as a general rule, a harmless and inoffen-
sive people, friendly disposed towards the government, and peaceable
in their relations with the citizens of the state. But when they pro-

cure intoxicating liquors of any kind they drink to excess, their ordinary nature and disposition is at once perverted, and their inclination is to assault and injure every one, without regard to race or color, who comes within their path. They become dangerous not only to themselves, but to society at large, and are the special terror of the women and children living in the community where the crime mentioned in the act is committed. There is absolutely nothing in the policy of the act which supports in any manner the view contended for by counsel, that the defendant is under any disability to commit the crime because he is an Indian. On the other hand, the entire policy of the act is in favor of holding the defendant amenable to the law, the same as any other person. It will be observed that, under the particular subdivision of the act here involved, it is not made an offense for any person to sell liquor to an Indian who is not a ward of the government under the charge of an Indian superintendent or agent. (There are other subdivisions of the statute which make it a crime to dispose of liquor to any Indian to whom allotment of land has been made by the government, but that subdivision has nothing to do with the present case.) If, therefore, any person could sell or dispose of liquor to such an Indian because he is not a ward of the government, and if such Indian, because he is an Indian, could sell and dispose of the liquor to the Indians who are the wards of the government, it would result in creating and encouraging all the evils that are intended to be prevented by the policy of the act. No construction is admissible which would sanction an evasion of the act. The citizens of this state are constantly complaining to the officers, national and state, to be more vigilant in finding out and arresting the offenders against this law, and, as a general rule, it is only upon complaints of this character that steps are taken which result in their arrest and conviction. The chiefs and other officers of the respective tribes who are living in their tribal relations, and are wards of the government, as well as the superintendents and agents of the Indian reservations, are earnest and active in aiding the citizens of this state in their efforts to get rid of all persons who are engaged in disposing of liquor to Indians, and this aid will not be withheld because the guilty party is an Indian.

It was suggested by counsel that the obtaining of the whisky and disposing of it to the Piutes by the defendant was simply a friendly act on his part, performed solely for the purpose of having a good time on Christmas eve, and that he had no intention to violate the law. These suggestions furnish no excuse whatever for the commission of the offense, and can only be considered, if at all, in mitigation of his sentence. The intent of the defendant in giving the liquor to the Piute Indians is wholly immaterial. It is the act itself, the doing of which constitutes the crime. Where a statute forbids the doing of a certain thing, and is silent concerning the intention with which it is done, a person who does the forbidden act is guilty, although he had no wrongful intent beyond that which is involved in the doing of the prohibited act. The defendant, if he voluntarily did the prohibited act, cannot excuse himself on the ground that he did not intend to violate the law.

The motion must be decided upon the meaning and interpretation of the statute. The real question is whether an "Indian" is included in the word "person," as specified in the statute. This question has never before been raised in this court, and hence I have deemed it necessary to put on record my individual views in regard thereto. There is apparently a dearth of authorities upon this direct question. But the absence of authorities, to my mind, can be readily accounted for upon the ground that cases arising under this statute have seldom, of late years, at least, been deemed of sufficient importance to require an opinion; and it is evident that the question herein presented has seldom been raised. This court has dealt with many cases under the statute within the past 10 years, and no Indian has ever before been accused of the commission of this offense. To my mind, the question is absolutely clear and easy of solution. The word "person" is broad and general, and includes all persons, of whatever denomination, sex, race, or color. No exception is made in the statute, and, in the absence of any exception, it necessarily applies to every person. An Indian is a person, within the meaning of the statute, the same as any other human being.

The defendant cites the language used by Black on Intoxicating Liquors (section 427), where, in speaking of the sale of liquor to Indians under the provisions of section 2139, Rev. St. U. S., the author says:

"By the laws of the United States it is provided that every person, except an Indian in the Indian country, who shall sell spirituous liquor to any Indian under the charge of any Indian superintendent or agent, shall be punishable by imprisonment. * * *"

Without attempting to trace the history of congressional legislation with regard to the crime of disposing of liquor to Indians, it is enough to say that many statutes have been passed in regard thereto. In the earlier statutes the words "except an Indian in the Indian country" were found therein. But long before the Revised Statutes were enacted these words were excluded therefrom. In the preface to the Revised Statutes the commissioner, among other things, said:

"The portions of the statutes repealed are printed in italics and included in brackets."

Section 2139 reads:

"No ardent spirits shall be introduced, under any pretense, into the Indian country. Every person [except an Indian, in the Indian country] who * * * disposes of any spirituous liquors * * * to any Indian under the charge of any Indian superintendent or agent * * * shall be punished by imprisonment," etc.

It will therefore readily be seen that the learned author, whose general statements upon different subjects are usually very accurate and correct, inadvertently made a mistake in regard to the law in question. The same mistake was made by Judge Deady in U. S. v. Windslow, 3 Sawy. 337, 28 Fed. Cas. 739 (No. 16,742). But the question is settled by the fact that since the publication of the Revised Statutes this act has been twice amended,—one amendment fixing the maximum of the sentence to be imposed (27 Stat. 260), and the other including a more definite statement of the offense, and

declaring the minimum of the sentence to be imposed (29 Stat. 506, c. 109). There are no exceptions mentioned in either of these amendments, and they are the only laws now in force upon the subject. It is evident that congress purposely left out the words "except an Indian in the Indian country," so as to reach "any person" and "every person" who commits the offense specified in the statute. In the face of this express legislation upon the subject, it cannot be said that the law does not apply to an Indian as well as to any other person. It is, however, proper to add that in support of the views herein expressed, and of the conclusions herein reached, there is an opinion directly in point, which was rendered prior to the enactment of the Revised Statutes, upon statutes which did not contain the words "except an Indian in the Indian country." In U. S. v. Shaw-mux, 2 Sawy. 364, 366, Fed. Cas. No. 16,268, Judge Deady said:

"The word 'person,' in its ordinary sense, includes an Indian, whether he be uncivilized, under the charge of an Indian agent, in the Indian country, or otherwise. The burden, then, is upon the defendant to show that, although he is plainly within the letter of the statute, he is not within the true intent and meaning thereof. The argument in his behalf is that the principal power of congress in the premises does not extend to the regulation or control of conduct or intercourse between Indians within the limits of a state, and therefore the statute should be construed so as to exclude this case, which is one of intercourse between Indians only. * * * But, in the revision and re-enactment of the section in 1862 (12 Stat. 339) and 1864 [13 Stat. 29], its operation, so far as the disposition of liquor to Indians is concerned, was limited to Indians under charge of a superintendent or agent, whether within or without the Indian country, and the provision of the act of 1854 [10 Stat. 270], restraining the natural signification of the word 'person' was not inserted, so that the section stands in this respect as it did prior to the passage of said act. It being premised that congress has the power to regulate the disposition of spirituous liquors to an Indian, by whomsoever such disposition is made, in considering the question of whether congress intended to include Indians in the word 'person,' as used in this section, weight ought to be given to the argument of convenience. Upon all the Indian reservations in the country Indians will be found, if permitted to do so with impunity, through whom white men will be able to introduce spirituous liquor among the Indians with comparative security to themselves. The traffic can scarcely be prevented unless the Indians who are employed as go-betweens are held to be within the purview of the law prohibiting it."

Motion denied.