[No. 8919.   Department Two.   December 10, 1910.]

THE STATE OF WASHINGTON, *Respondent*, v. A. NICOLLS, *Appellant*.[1]

CITIZENS—CHILDREN OF CITIZENS—INDIANS. The civil status of one born of an Indian mother, by a white father who is a citizen of the United States, follows that of the father.

INDIANS—SALE OF LIQUORS—PROHIBITION—CONSTITUTIONAL LAW—POLICE POWER—PRIVILEGES. Under the police power the legislature can prohibit the sale of liquor to an Indian of mixed blood, although he be a citizen of the United States, without violating the rights and privileges guaranteed by § 1 of the fourteenth amendment to the Federal constitution.

SAME—INDIANS OF MIXED BLOOD—STATUTES. A statute prohibiting the sale of liquor to an Indian of mixed blood having more than one-eighth Indian blood applies to all such Indians, regardless of the legal status of his white father.

CONSTITUTIONAL LAW—PRIVILEGES AND IMMUNITIES—INTOXICATING LIQUORS—PROHIBITION. The right to sell or drink liquor is not a constitutional right and may be granted to one class of citizens and denied to others.

INDIANS—SALE OF LIQUORS—PROHIBITION—INTENT. The element of *intent is not a necessary ingredient* of the offense of selling liquor to an Indian of the mixed blood, the statute not using the word "knowingly" or any qualifying words.

Appeal from a judgment of the superior court for Whatcom county, Hardin, J., entered February 11, 1910, upon a trial and conviction of selling intoxicating liquor to an Indian. Affirmed.

*Abrams & Shamel*, for appellant.

*George Livesey* and *J. W. Kindall*, for respondent.

[1]Reported in 112 Pac. 269.

CHADWICK, J.—Appellant was convicted of the crime of selling liquor to one Plaster, an Indian of mixed blood. The apt words of the statute under which the information was drawn are as follows: "That any person who shall sell, give away, dispose of, exchange, or barter any malt, spirituous, or vinous liquor of any kind whatever . . . to any Indian whatsoever, or a mixed-blood Indian being more than one-eighth Indian, shall be guilty," etc. The fact of the selling is not denied. But the case is brought here upon numerous assignments of error, all of which are directed to two propositions of law; first, whether a person born of an Indian mother and a white father, being a citizen of the United States, is an Indian within the meaning of the law; and second, whether the want of intent is a defense to the crime charged.

That the civil status of one born of an Indian mother and a white father who is a citizen of the United States follows that of the father, is well established by the authorities. *Ex parte Reynolds*, Fed. Cas., No. 11,719; *United States v. Ward*, 42 Fed. 320; *United States v. Hurshman*, 53 Fed. 543; *Keith v. United States*, 8 Okl. 446, 58 Pac. 507. But it does not follow that there is any merit in the contention of the appellant that, because Plaster was a citizen of the United States, he is not, therefore, an Indian of the mixed blood within the meaning of the law; or that being a citizen, the enforcement of the law would result in an unlawful discrimination between citizens, in violation of the rights, privileges, and immunities guaranteed by §1 of the fourteenth amendment to the constitution of the United States. The cases bearing upon the question of citizenship have no relevancy here. The power of the legislature to pass all needful police regulations cannot be questioned, and so long as regulations bear with equal weight upon all of like situation or of the same class, they are universally upheld by the courts. The power of the legislature to pass laws prohibiting the sale of liquor to Indians or those of Indian descent, rests upon the same principle of protection to the public as laws prohibiting the sale of liquor to minors,

habitual drunkards, and the like. *State v. Mamlock*, 58 Wash. 631, 109 Pac. 47; 17 Am. & Eng. Ency. Law, 345; Black, Intoxicating Liquors, 42.

It is contended, however, that Plaster does not come within the term "mixed-blood Indian, being more than one-eighth Indian;" that following the status of the father as to citizenship, he would, technically and strictly speaking, be a white man of mixed blood, and thus immune from the law. While the statute may be subject to this technical construction, we think its intent to proscribe all persons of Indian descent, who have more than one-eighth Indian blood in their veins, is apparent. The words "mixed blood" are equivalent, in our judgment, to the words of the Michigan statute, construed in the case of *People v. Gebhard*, 151 Mich. 192, 115 N. W. 54, the words being that liquor should not be sold "to any Indian, nor any person of Indian descent." The court concluded:

"We think that the language used by the legislature clearly manifest their intention to prohibit not only sales to full-blooded Indians, but to all persons with Indian blood in their veins."

For, as was said by the court:

"The same reason which applies to prohibiting sales to full-blooded Indians applied also to half-breeds. The Indian blood, like the blood of all savage races, is liable to much greater inflammation and excitation than that of civilized races, rendering people otherwise friendly when sober, ferocious and ungovernable when under the influence of intoxicating drink."

"The term 'mixed blood,' used in treaties and in statutes, includes persons of half, or more or less than half, Indian blood, derived either from the father or from the mother." 22 Cyc. 113.

The right to sell or drink liquor is not a constitutional right, but a privilege which the state may grant to one class of its citizens and deny to another class. This proposition is so well established that it will require no citation of authori-

ties to prove that it is in no way obnoxious to the Federal constitution.

Nor does the lack of intent excuse the offense. While it is an axiom of the law that there can be no crime without criminal intent, there are many cases where the execution and enforcement of the law demand that the intent be implied; a presumption flowing from the acts of the parties. This rule has been generally, although not quite universally, applied in the enforcement of statutes passed in aid of the police power of the state, where the word "knowingly" or other apt words are not employed to indicate that knowledge is an essential element of the crime charged. In the statute before us no qualifying words are employed. One who sells, gives, or barters intoxicating liquor to an Indian or one of mixed blood, is guilty. The fact of selling being established, the law supplies the element of intent.

"In these cases there is a voluntary act which the party does at his peril, and he is not to be excused either by ignorance of the law or ignorance of the fact. Either kind of ignorance implies a fault, and it must be assumed that with due diligence the true character of the act could have been ascertained." Freund, Police Power, 635, 636.

See, also, 8 Am. & Eng. Ency. Law (2d ed.), 291, and 12 Cyc. 158, where additional authorities are collected. In the case at bar there is no showing of positive intent, and the legislature, evidently mindful of the peril of the liquor seller in such cases, has provided that the trial judge shall have a wide discretion in fixing the punishment. This is as far as the law goes to relieve the appellant of his inadvertence.

Finding no error in the record, the judgment is affirmed.

RUDKIN, C. J., MORRIS, DUNBAR, and CROW, JJ., concur.