277 P.2d 566

STATE of Idaho, Plaintiff and Appellant,

v.

George RORVICK, Defendant and Respondent.

No. 8195.

Supreme Court of Idaho.

Dec. 8, 1954.

---

Robert E. Smylie, Atty. Gen., J. R. Smead, Asst. Atty. Gen., J. Clinton Peter-

60

son, Asst. Atty. Gen., Boise, Jay H. Stout, Prosecuting Atty., Bingham County, Blackfoot, for appellant.

J. Blaine Anderson, Blackfoot, for respondent.

Arthur Lazarus, Jr., Richard Schifter, Washington, D. C., Theodore H. Little, Clarkston, Wash., Amici Curiae.

KEETON, Justice.

Respondent was charged in a criminal complaint filed in a Justice Court with the unlawful sale of beer, alleged to be an intoxicating liquor, to an Indian. The Justice sustained a general demurrer to the complaint. On appeal to the District Court of Bingham County, the District Judge likewise sustained a general demurrer and dismissed the proceeding. The State has appealed to this Court. The complaint charges:

"That George Rorvick of Fort Hall, Idaho, on or about the 26th day of September, 1953, at Fort Hall, in the County of Bingham and State of Idaho, then and there being, did then and there wilfully, knowingly, intentionally and unlawfully sell or furnish, or cause to be sold or furnished, intoxicating liquor, to-wit: beer, to one Wilford George, said Wilford George being then and there an Indian, contrary to the Idaho Code, Sec. 18–4201."

It is the contention of the respondent that such complaint charges no crime in that the provision of the Code, Sec. 18–4201 I.C. prohibiting the sale of intoxicating liquor to an Indian, is unconstitutional and in conflict with Art. 1, Secs. 1 and 2 of the Idaho Constitution,[1] and the 14th Amendment to the Constitution of the United States.[2] Respondent argues that Sec. 3, Art. 6, of the Idaho Constitution was amended in the general election of 1950, by which amendment, disqualifications of Indians in certain particulars contained in the original article were eliminated; and since Indians, by the Constitution as now in effect, and congressional enactments by the Congress, 8 U.S.C.A. § 1401, have had conferred on them all rights of citizenship, such amendment and congressional enactment carry all privileges granted others as citizens of the State, including the right or privilege to buy intoxicants.

Respondent contends that Indians are now citizens of the United States and therefore the Legislature has no power to

1. "All men are by nature free and equal, and have certain inalienable rights, among which are enjoying and defending life and liberty; acquiring, possessing and protecting property; pursuing happiness and securing safety.

"All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform or abolish the same whenever they may deem it necessary; and no special privileges or immunities shall ever be granted that may not be altered, revoked, or repealed by the legislature."

2. "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

classify, segregate, or discriminate against them, and that the statute prohibiting the sale of intoxicating liquors to Indians is arbitrary, discriminatory and unreasonable, and denies the Indians, as a class, the equal protection of the law.

Federal and state statutes prohibiting the sale of intoxicants to Indians are of early origin and were first enacted by colonies' legislative bodies. The first Federal control measure was enacted in response to a plea by an Indian Chief, Little Turtle, to President Jefferson, who complained that the whites were selling intoxicating liquor to Indians which pauperized and demoralized them and is reported to have said:

"It is the introduction of this fatal poison which keeps them [the Indians poor. * * * Before anything can be done to advantage this evil must be remedied. * * * Since their [the Indians] intercourse with the white people and owing to the introduction of this fatal poison we have become less numerous and happy." Am. State Papers, Vol. 7 (Indian Affairs, Class II, Vol. 1) (1789–1815, p. 655.) Ch. 17 —Handbook of Fed. Ind. Law. 352.

At different times, subsequent to this complaint to Jefferson, various Federal laws were passed and regulations promulgated prohibiting and controlling the vending and distribution to Indians of intoxicants.

Without reviewing cases and texts covering the subject matter suffice to say that such prohibitions and interdictions have been by the courts universally upheld, generally on two theories; first, the power of Congress to regulate commerce with Indians and Indian tribes, Art. 1, Sec. 8, Cl. 3, U. S. Constitution; and second, the duty to protect Indians from well recognized weaknesses and to protect the people with whom they come in contact. United States v. Nice, 241 U.S. 591, 36 S.Ct. 696, 60 L.Ed. 1192; United States v. Holliday, 3 Wall. 407, 18 L.Ed. 182; Brown v. United States, 9 Cir., 8 F.2d 433; 42 C.J.S., Indians, § 76 p. 791; 27 Am.Jur. 577, Sec. 55; 31 C.J. 535, Sec. 122.

The Federal statute in effect during recent times, 18 U.S.C.A. § 1154, now amended, prohibited the furnishing of intoxicating liquor:

"* * * to any Indian to whom an allotment of land has been made while the title to the same shall be held in trust by the Government, or to any Indian who is a ward of the Government under charge of any Indian superintendent, or to any Indian, including mixed bloods, over whom the Government, through its departments, exercises guardianship * * *."

This prohibition made it unlawful to sell intoxicating liquor to Indians, coming within the prescribed classes, regardless of the place in the United States where the sale is made. United States v. Miller, D.C., 105 F. 944; United States v. Holliday,

supra; United States v. Osborn, D.C., 2 F. 58; Brown v. United States, supra; Mulligan v. United States, 8 Cir., 120 F. 98.

18 U.S.C.A. § 1154 was modified by Congress on August 15, 1953, and by the amendment it limited the provisions of the inhibition as follows:

"The provisions of sections 1154 * * * of this title, shall not apply within any area that is not Indian country, nor to any act or transaction within any area of Indian country provided such act or transaction is in conformity both with the laws of the State in which such act or transaction occurs and with an ordinance duly adopted by the tribe having jurisdiction over such area of Indian country, certified by the Secretary of the Interior, and published in the Federal Register." 18 U.S.C.A. § 1161, Crimes & Criminal Procedure.

We shall not review further the history of Federal prohibition laws and regulations making it an offense, under prescribed conditions, to sell intoxicating liquors to Indians, except to say that such prohibition and interdictions were enacted for the protection of the Indians, often at the Indians' solicitation and request and to guard them from debasing influences and from being further imposed upon, cheated and wronged by their conquerors.

State statutes prohibiting the sale of intoxicating liquor to Indians where Federal jurisdiction was not exclusive were at an early time in American history enacted by the legislatures of many states, and were generally upheld as a proper exercise of police power to protect certain classes of persons liable to be injured morally or physically by its use. The historical background supports the conclusion that Indians come within such class. The Legislatures recognized that the protection of the class and those with whom they came in contact was an advisable and proper regulation. People v. Gebhard, 151 Mich. 192, 115 N.W. 54; 27 Am.Jur. 577, Sec. 55.

It is unnecessary to review the genetics or to indulge in a scientific analysis or discussion of anthropogeny to discover the reasons for the interdictions. Suffice to say that the historic background of laws prohibiting sale of intoxicants to Indians is well recognized and must now be considered as firmly established.

In an early case, United States v. Holliday, 1865, 3 Wall. 407, 18 L.Ed. 182, the Court held even though Indians had conferred upon them rights as electors or citizens of a state, the Congress had jurisdiction to pass legislation making it a crime to sell intoxicating liquors to them.

In People v. Bray, 105 Cal. 344, 38 P. 731, 27 L.R.A. 158, the defendant was prosecuted under a provisoin of California Penal Code, Sec. 397, making it a felony to sell intoxicating liquor to Indians. The defendant contended that it was not a violation to sell intoxicating liquor to an Indian who,

at the time of the sale, was a citizen of the State, and further contended that a law which takes from one person on account of color or race any privilege which others are permitted and allowed to enjoy, is void. The Court rejected the contention and held that even though the particular person of Indian blood to whom the intoxicating liquor was sold was not a member of any tribe and was living in a state of civilization and not under the jurisdiction of the Federal Government in any degree, nevertheless the interdiction was a proper exercise of police power. This decision was followed in People v. Lemon, 105 Cal. XVII, 38 P. 905, and in People v. Goodrich, 105 Cal. XVII, 38 P. 954.

Similar legislation in Montana prohibiting the sale of intoxicants to Indians was attacked as unconstitutional in Territory v. Guyot, 9 Mont. 46, 22 P. 134, 136. The Court upheld the legislation saying:

"There is no limitation upon the authority of a territory to pass laws for the regulation and restriction of 'the sale of articles deemed injurious to the health or morals of the community.' The act under consideration is clearly within the police power of the territorial government, as defined by the courts, and is not inconsistent with the constitution and laws of the United States."

In State v. Mamlock, 58 Wash. 631, 109 P. 47, the constitutionality of a statute similar to that of Idaho was challenged. The Court upheld the act and rejected the contention that the facts established no crime, even though the particular person to whom the intoxicating liquor was sold was a citizen of the State. The Court said:

"The validity of state laws prohibiting the sale of intoxicating liquors to certain classes of persons who are peculiarly liable to be injured morally or physically by their use * * *, has so often been affirmed by the courts that the question is no longer an open one. * * * That the American Indian falls within the classes thus defined, whether he be a citizen of the United States or otherwise, is equally well settled."

In State v. Nicolls, 61 Wash. 142, 112 P. 269, 270, the question presented was whether a person born of an Indian mother and a white father being a citizen of the United States is an Indian within the meaning of the law prohibiting the sale of intoxicating liquor to Indians. The Court said:

"But it does not follow that there is any merit in the contention of the appellant that, because Plaster [the Indian to whom the liquor was sold] was a citizen of the United States, he is not therefore an Indian * * * within the meaning of the law; or that being a citizen, the enforcement of the law would result in an unlawful discrimination between citizens, in violation of the rights, privileges, and immunities guaranteed by section 1 of the fourteenth amendment to the Con-

stitution of the United States. The cases bearing upon the question of citizenship have no relevancy here. The power of the Legislature to pass all needful police regulations cannot be questioned, and so long as regulations bear with equal weight upon all of like situation or of the same class, they are universally upheld by the courts. The power of the Legislature to pass laws prohibiting the sale of liquor to Indians or those of Indian descent, rests upon the same principle of protection to the public as laws prohibiting the sale of liquor to minors, habitual drunkards, and the like." Citing State v. Mamlock, 58 Wash. 631, 109 P. 47; 17 Am. & Eng. Ency. Law 345; Black, Intoxicating Liquors, 42.

In State v. Kenney, 83 Wash. 441, 145 P. 450, 451, it was held even though the Indian to whom the defendant was charged to have sold intoxicating liquor was a citizen of the State of Washington, such citizenship was no defense. The Court said:

"The statute [making it an offense to sell intoxicating liquor to an Indian] makes no exceptions in favor of citizen Indians or the offspring of those who are citizens. If there be the blood of an Indian to the degree of more than one-eighth in the person to whom liquor is given or sold, they are within the statute." Citing cases.

In People v. Gebhard, 151 Mich. 192, 115 N.W. 54, the Court held:

"It is within the police power of the state to make it an offense to sell liquor to any person of Indian descent, though he is a citizen of the United States and of the state."

In Dagan v. State, 162 Wis. 353, 156 N.W. 153, the prohibition was held applicable to a full blooded Indian who was a citizen and not a member of any tribe.

In Hallowell v. United States, 221 U.S. 317, 31 S.Ct. 587, 55 L.Ed. 750, it was held that an Indian allottee of land, though a citizen of the United States and entitled to the rights, privileges and immunities of such citizenship, was still a ward of the Government, and such citizenship would not take away jurisdiction of the United States to protect the Indian from the evil results of drinking intoxicating liquors. For other authorities see State v. Carman, 44 Utah 353, 140 P. 670; People v. Faust, 113 Cal. 172, 45 P. 261; United States v. Zumwalt, D.C., 186 F. 596.

By express provision of the Idaho Constitution, Art. 3, Sec. 26 confers power on the Legislature as follows:

"From and after the thirty-first day of December in the year 1934, the legislature of the state of Idaho shall have full power and authority to permit, control and regulate or prohibit the manufacture, sale, keeping for sale,

and transportation for sale, of intoxicating liquors for beverage purposes."

■ Pursuant to this provision and the plenary police powers of the State over the liquor traffic within its borders, the Legislature passed Ch. 132, 1935 S.L., and as thereafter amended, and as now codified, Ch. 10, Title 23, I.C. which by its terms authorized the sale of beer under circumscribed conditions. That the State has full power and authority to regulate traffic in and sale of intoxicating liquor within its borders regardless of Constitutional grant of power is well established. State v. Musser, 67 Idaho 214, 176 P.2d 199; In re Crane, 27 Idaho 671, 151 P. 1006, L.R.A. 1918A, 942; Crane v. Campbell, 245 U.S. 304, 38 S.Ct. 98, 62 L.Ed. 304; Mugler v. State of Kansas, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205.

In Crane v. Campbell, supra [245 U.S. 304, 38 S.Ct. 99], the Supreme Court of the United States speaking through Justice McReynolds said:

"It must now be regarded as settled that, on account of their well-known noxious qualities and the extraordinary evils shown by experience commonly to be consequent upon their use, a state has power absolutely to prohibit manufacture, gift, purchase, sale, or transportation of intoxicating liquors within its borders without violating the guarantees of the Fourteenth Amendment." Citing cases.

■ The right to vote or the conferring of citizenship has, by no authority that has been called to our attention, been considered a sufficient reason why an Indian, or other interdicted person, should be permitted as a matter of right to purchase intoxicating liquors; and all the authorities where the contention was considered have decided the matter adverse to respondent's contention.

■■ The business of selling intoxicating liquor is from its very nature subject to regulations and restrictions. A saloon has never been a favorite of the law, but at all times has been a business especially susceptible to strict regulations in many regards. Such strict regulations have been sustained because of the character and nature of the business, and as a proper exercise of the police power of the State. Sale to Indians was not prohibited because of their copper colored skin, or their coarse, straight, black hair, or affected by citizenship or absence of it.

When our statute prohibiting such sale was enacted, it strictly conformed to the thinking and beliefs of the day. All decisions upholding such legislation are clear and positive. Until very recently, no one questioned the soundness or logic of such decisions or the accuracy of the conclusions. The fact that many of the decisions above cited were decided many years ago does not discredit them. The logic and the reasons are still applicable. . . . .

The Legislature has broad powers when acting under its police powers. What shall be done and how are matters for the Legislature; courts interfere only when the acts are incapable of being sustained.

The argument of respondent and amici curiae might properly be addressed to the Legislature—not the courts.

Consumption of intoxicating liquors never advanced or benefitted any race or any people, and history proves that it has cursed and demoralized the Indians.

There is no natural or inherent right to deal in intoxicants and the sale of beer as a business can only be lawfully done as authorized by express legislation. The license or privilege granted the respondent to sell beer under prescribed conditions is a mere franchise which may be granted at the will of the Legislature, subject to such terms and conditions as the Legislature may see fit to prescribe. 48 C.J.S., Intoxicating Liquors, § 20, p. 154.

Sales of intoxicating liquor which are not within the terms of the conditions prescribed by the Legislature, or which are for purposes other than those specified, subject the licensee amenable to the criminal laws prohibiting such acts.

It is also within the province of the Legislature, regardless of citizenship, to specify classes and persons to whom sales of intoxicants shall not be made. Statutes prohibiting the sale of intoxicating liquors to sailors and soldiers, and persons in the military service, Bailey v. United States, 6 Cir., 267 F. 559; to students, People v. Damm, 183 Mich. 554, 149 N.W. 1002; to minors, State v. Alvord, 46 Idaho 765, 271 P. 322; to Indians, 42 C.J.S., Indians, § 76, p. 791, and authorities cited supra, have been universally upheld as a proper regulation of the liquor traffic, and within the police power of the State.

Sec. 18-4201, I.C. claimed by the State to have been violated in this proceeding was passed by the territorial legislature in 1879 and has continued in effect unrepealed and unamended. Laws regulating the sale of intoxicating liquors have been passed by the Legislature subsequent to that time, and the constitution in various particulars amended, and this is the first time that the statute in question has been challenged in the manner herein done. This interdiction has been a fixed policy of the State for seventy-five years. If the interdiction imposed is to be modified or repealed, such change or modification should be made by the Legislature.

The statute here attacked is general and uniform in its operation; it affects in the same manner all persons belonging to the class to which it refers, and is sustained by numerous decisions and by a historical background that cannot now be successfully challenged in the manner attempted.

Sec. 18-4201, I.C. does not violate either the Federal or State Constitution. No authority has been called to our attention which reached a contrary conclusion.

The judgment is reversed with instructions to the trial court to reinstate the complaint, overrule the demurrer, permit the defendant to plead further, and proceed from there.

PORTER, C. J., and BAKER, J., concur.

GIVENS and TAYLOR, Justices (dissenting).

The Federal statutes prohibiting the sale of intoxicating liquor to Indians have been upheld uniformly because of specific authority to Congress to so legislate in Article I, Section 8(3) of the Constitution:

"To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes".

No such provision is in our State Constitution and the only authority for our statute, Section 18-4201, I.C., is to be found in the exercise of the police power. Brown v. United States, 9 Cir., 8 F.2d 433. Therefore, the Federal statutes or decisions are not pertinent and need not be discussed.

The justification for upholding the constitutionality of this statute thereby classing Indians with drunkards, insane persons, idiots, and minors is assertedly based on pronouncements in the following cases:

People v. Gebhard, 151 Mich. 192, 115 N.W. 54, decided in 1908, traced the history of such legislation in Michigan from 1812 to determine what constituted " 'a person of Indian descent,' " and the only statement with reference to the classification interdicting the sale of liquor to Indians is:

"The Indian blood, like the blood of all savage races, is liable to much greater inflammation and excitation than that of civilized races, rendering people otherwise friendly when sober ferocious and ungovernable when under the influence of intoxicating drink." citing People v. Bray, 105 Cal. 344, 38 P. 731, 733, 27 L.R.A. 158, wherein the statement on the point involved is as follows:

"Whatever may be true in respect to particular individuals of that race, it is certainly true that Indians as a class are not refined, cultured,—civilized in the same degree as persons of the white race,—and doubtless, in the judgment of the legislature, they are less subject to moral restraint, and therefore more liable to be dangerous to themselves or others when under the influence of liquor, or less able to resist the desire for such liquors, and for that reason they, as well as the community in which they move, were thought entitled to the protecting influence of this statute. We have no doubt the law under consideration falls within the proper exercise of the police power of the state. It was so stated by Sanderson, J., in Ex parte Smith, 38 Cal. [702] 708, and a statute in all respects similar to it was upheld by the supreme court of the territory of Montana as a valid exercise of the police

power in the case of Territory v. Guyot, [9 Mont. 46] 22 P. 134, the court there saying: 'The act under consideration is clearly within the police power of the territorial government as defined by the courts, and is not inconsistent with the constitution and laws of the United States.' "

In Ex parte Smith, 38 Cal. 702, therein cited in support of the generalization as to the effect of intoxicating liquor upon Indians, the court was considering an ordinance of the City of Sacramento, as follows:

" 'Ordinance No. 91—To prohibit noisy amusements and to prevent immorality. Passed May 11, 1868.

" 'The Board of Trustees of the City of Sacramento ordain as follows:

" 'Section 1. It shall be unlawful within the city, in the nighttime, after twelve o'clock midnight, for any person to play or make a noise upon any musical instrument in any drinking saloon, or beer cellar, or to permit or allow the same by the proprietor, agent or manager thereof.

" 'Sec. 2. It shall be unlawful for any female person, in the nighttime, after twelve o'clock midnight, to be in any public drinking saloon, beer cellar or billiard room within said city, where vinous, malt or spirituous liquors are sold or given away, to be drank on the premises.' "

After reviewing the general right of the legislature to pass statutes under the police power, the court stated:

"In view of these fundamental principles, Legislatures have enacted a variety of laws which, undoubtedly, in a general sense, affect the rights of life, liberty, property, safety and happiness, by way of restraint. Of such are laws regulating the slaughter of animals, the interment of the dead, the erection of buildings in cities and towns of inflammable materials, the manufacture and keeping of gunpowder and other explosive compounds, the vending of poisons and other noxious drugs, the sale of intoxicating beverages to certain classes of persons, as Indians, and even to all classes of persons—as in the case of the Prohibitory Liquor Laws of Maine and Massachusetts."

It will be noted that none of the activities regulated involved question of classes, except as to Indians and then only by way of passing notice and not a definite holding.

Territory v. Guyot, 9 Mont. 46, 22 P. 134, 136, decided in 1889, after considering generally the relative right of Congress to pass inhibitory liquor statutes as to Indians and territories, contains no statement justifying putting the Indians in an interdicted class, the only statement being:

"There is no limitation upon the authority of a territory to pass laws for the regulation and restriction of 'the sale of articles deemed injurious to

the health or morals of the community.' The act under consideration is clearly within the police power of the territorial government, as defined by the courts, and is not inconsistent with the constitution and laws of the United States."

Thus, while the above cases sustained the constitutionality of such a statute, they *did not in any way consider or pass upon or justify the classification,* except on the basis of asserted general knowledge with no scientific sustaining determination of the truth or soundness of the assertion.

People v. Lemon, 105 Cal. XVII, 38 P. 905 and People v. Goodrich, 105 Cal. XVII, 38 P. 954, merely follow the Bray case without elaboration.

State v. Mamlock, 58 Wash. 631, 109 P. 47, decided in 1910, states:

"The validity of state laws prohibiting the sale of intoxicating liquors to certain classes of persons who are peculiarly liable to be injured morally or physically by their use, such as minors, persons already intoxicated, habitual drunkards, idiots, and insane persons, has so often been affirmed by the courts that the question is no longer an open one. Black on Intoxicating Liquors, § 42; 23 Cyc. 163. That the American Indian falls within the classes thus defined, whether he be a citizen of the United States or otherwise, is equally well settled. (Cases.) As said by the Supreme Court of Minnesota in State v. Wise, supra (70 Minn. 99, 72 N.W. 843): 'The statute is a police regulation. It was enacted in view of the well-known social condition, habits, and tendencies of Indians as a race. While there are doubtless notable individual exceptions to the rule, yet it is a well-known fact that Indians as a race are not as highly civilized as the whites; that they are less subject to moral restraint, more liable to acquire an inordinate appetite for intoxicating liquors, and also more liable to be dangerous to themselves and others when intoxicated. In view of these considerations, it was thought wise to protect persons of that race as well as the community at large by prohibiting the sale of intoxicating liquors to them altogether. We are therefore of opinion that the statute applies to and includes all Indians as a race, without reference to their political status. Thus construed, the statute is a valid exercise of the police power of the state. It is neither arbitrary class legislation, nor does it abridge the privileges or immunities of citizens of the United States, or deprive any person of liberty or property without due process of law, within the meaning of the 14th amendment of the federal Constitution. The difference in conditions between Indians as a race and the white race constituted a sufficient basis for classification.' "

The general statements therein with regard to the exercise of police power have no definitive bearing whatsoever upon classifying Indians with drunkards, minors, and insane persons.

That this statute is clearly class legislation is proved by the statements in the cases relied on by the majority.

> "The right to sell or drink liquor is not a constitutional right, but a privilege which the state may grant to one class of its citizens and deny to another class. This proposition is so well established that it will require no citation of authorities to prove that it is in no way obnoxious to the federal Constitution." State v. Nicolls, 61 Wash. 142, 112 P. 269, at page 270.

To the same effect is State v. Kenney, 83 Wash. 441, 145 P. 450.

There is no question but what the state, under the police power, has the right to control and regulate or prohibit the manufacture and sale of intoxicating liquor. However, the statute under consideration denies the right to sell to Indians; thus, it interdicts the right to buy, intoxicating liquors— a right which is not denied to any other class because of *race* distinction. Other citizens, no matter of what ancestry, and any foreigner, regardless of his citizenship and regardless of race or ancestry, may legally purchase intoxicating liquor, if, in Idaho, they have a permit.

Much misconception has arisen and consequent misstatements have been made with regard to the right to manufacture and sell intoxicating liquor. Absent a constitutional or statutory regulation or prohibition, the manufacture and sale of intoxicating liquor is not unlawful; was not an offense at common law; was not a crime, and under the common law anyone had the right to manufacture and sell intoxicating liquor. The authorities that have definitively considered the proposition all so hold.

> "The business of selling liquor is not of itself wrongful and a nuisance per se. (Cases.) It is the unrestricted and unregulated sale of it that the courts have regarded as tending to pauperism and crime. (Cases.) Its sale was lawful at common law; and, if it were not for the restrictions that have been placed upon it by legislative enactments, every person in the state would be as free to engage in the business as he would be to engage in the business of selling any other property. Sopher v. State [169 Ind. 177], 81 N.E. 913, 915 [14 L.R.A.,N.S., 172], and cases there cited. As this was the common-law right of every citizen, it is plain to be seen that statutes commonly spoken of as license laws are not, strictly speaking, grants of special privileges, but rather restrictions upon the exercise of a previously existing right." State v. Roberts, 74 N.H. 476, 69 A. 722, at page 723, 16 L.R.A.,N.S., 1115.

In Sopher v. State, 169 Ind. 177, 81 N.E. 913, 915, 14 L.R.A.,N.S., 172, the defend-

ant was charged with maintaining an alleged public nuisance by selling intoxicating liquor. On the matter of inherent rights, the court said:

"The first general statute restricting and regulating the keeping of alehouses and tippling-houses was passed by the British Parliament in 1552, and was the act of fifth and sixth Edward the Sixth. This statute constitutes chapter 25, page 391, of the English Statutes at Large 1540 to 1552. The preamble to this statute declares: 'For as much as intolerable hurts and troubles to the commonwealth of this realm doth daily grow and increase through such abuses and disorders as are had and used in common ale houses and other houses called tippling houses, it is therefore enacted by the king, our Sovereign Lord,' etc. At common law, prior to the passage of this statute, any person had the right or privilege, without a license, to keep and maintain alehouses and tippling-houses. Such business was not regarded as a public offense, but was considered and held to be a means of livelihood which any one was free to follow. In support of this proposition, see (cases cited). In the authority last cited (Bishop on Statutory Crimes (3d Ed.) §§ 984, 985) it is said: 'It is at common law lawful to keep a properly regulated inn, alehouse, or tippling-house; which severally are indictable only when disorderly.' "

"It (manufacture and sale of intoxicating liquor) was recognized as a legitimate business at common law. (Cases.) To hold otherwise is to shut our eyes both to the development of the law of England and her American colonies and the history of the English speaking world." Campbell v. Jackman Bros., 140 Iowa 475, 118 N.W. 755, at page 759, 27 L.R.A.,N.S., 288; Vol. 1, The Law of Intoxicating Liquors by Woollen and Thornton, 1910, Section 89, page 103, citing numerous cases and authorities.

The gist of the majority opinion is that statutes prohibiting the sale of liquor to Indians were not enacted or upheld because of the inferiority of any race, but because the courts in the cited cases said Indians as a race were more susceptible to the bad effects of intoxicating liquors than whites. The sole basis for such inhibited race classification is the mere ipse dixit of the five or six courts in the above cases so declaring. Such race classification was by white courts of the conquering race and governments against a conquered race, who, until 1887, were not citizens and had no voice by vote in the government, state or national, thus interdicting them. A classification must rest on substantial and sustainable distinctions.

"The equal protection clause of the 14th Amendment establishes the right of citizens of the several states to equal treatment under state law. It

recognizes the right of the state, through its legislature, to classify persons and property, based upon reasonable and natural distinctions, to accomplish the legitimate purposes of its police power. If the classification is not unreasonable, arbitrary or capricious, and under it all persons in like circumstances enjoy the same privileges and bear the same burdens, the classification does not deny equal protection of the law. (Cases.)" State v. Evans, 73 Idaho 50, at page 54, 245 P.2d 788 at page 790.

Except as to drunkards, minors, idiots and insane people, and soldiers and sailors in specific restricted situations, which classify themselves, Indians alone are singled out by this statute as incapable of self control sufficiently commensurate with white adults, to purchase and drink intoxicating liquor. Though citizens, and if accrued allottees, no longer wards or under guardianship of the Federal Government or in a state of pupilage or tutelage or other subordinate condition, and entitled to all the other rights and privileges that citizens of the state and nation have, may not purchase liquor, on the pure assumption by some half dozen courts, without any scientific investigation or justification, that being uncivilized they cannot handle liquor as well as the civilized whites.

A holding that makes classes of citizens is completely undemocratic and contrary to the fundamental concept contained in the Declaration of Independence and set out and assured in the Federal and our State Constitutions. The designation and upholding of classes of citizens, solely because of race distinctions, is invidious, archaic, and obnoxious and has been and is being stricken down by the Supreme Court of the United States.

Exercise of police power must be within constitutional limits and with due regard and recognition of what constitutes justification for classification. When this statute was passed, Indians were not, by Federal or State statutes, citizens. They were under guardianship and wards of the Federal Government, variously described as a condition of pupilage or tutelage and in the West, at least, they had not theretofore generally been allotted ownership of individual pieces of real property aside from Indian Reservations. Indians are now citizens of both the State and Nation under modified guardianship, still it is true by reason of tribal relationship in some instances carrying on tribal traditions and tribal government, and their allotments have in most instances accrued.

The bulk of the majority opinion is devoted to the support of propositions which are universally accepted, and are not germane to the real point in issue. The power of the Federal Government in the premises is not questioned. Authorities cited on that subject are irrelevant. The important fact to note in that connection is that there is no such comparable power in the State.

It is also recognized that citizenship is not a controlling factor. The Legislature may discriminate between citizens if its classifications are reasonable and based on real, established or recognized distinctions. While a government might justify itself in arbitrary discrimination against an alien, it should never tolerate such discrimination against its own. The fact of citizenship should be an added reason for the elimination of arbitrary and unfounded distinctions.

The real basis of the majority opinion is that the Indian as a race is more responsive to the baneful effects of intoxicants than any other race resident in our State. This is so because some ancient court has said so, and other courts have accepted the conclusion, all without inquiry or judicial determination. So, by means of mythology and folklore, it has become established beyond further question.

Injustice does not become venerable with age. The fact assumed cannot be said to be based upon or established by "common knowledge." A comparison of the effects of alcoholic beverages upon Negroes and Mexicans (the latter partly of Indian blood), and for that matter, the White race also, does not permit such a basis for this discrimination against Indians.

Discrimination of this kind is not now countenanced, Piper v. Big Pine School Dist. of Inyo County, 193 Cal. 664, 226 P. 926; Begay v. Sawtelle, 53 Ariz. 304, 88 P.2d 999; Bradley v. Arizona Corporation Commission, 60 Ariz. 508, 141 P.2d 524; Harrison v. Laveen, 67 Ariz. 337, 196 P.2d 456; and the judgment of the trial court, striking down the statute as unconstitutional, should be affirmed.